**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 26 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DRU CHOKER, D.V.M.; MATTHEW DEMARCO, D.V.M., <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> PET EMERGENCY CLINIC, P.S.; NATIONAL VETERINARY ASSOCIATES, INC., acting on its own behalf and that of NVA Parent, Inc., <br><br> Defendants-Appellees. | No. 22-35650 <br><br> D.C. No. 2:20-cv-00417-SAB <br><br> MEMORANDUM[*] |
| DRU CHOKER, D.V.M.; MATTHEW DEMARCO, D.V.M., <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> PET EMERGENCY CLINIC, P.S.; NATIONAL VETERINARY ASSOCIATES, INC., acting on its own behalf and that of NVA Parent, Inc., <br><br> Defendants-Appellants. | No. 22-35698 <br><br> D.C. No. 2:20-cv-00417-SAB |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| | |
|---|---|
| DRU CHOKER, D.V.M.; MATTHEW DEMARCO, D.V.M.,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>NATIONAL VETERINARY ASSOCIATES, INC., acting on its own behalf and that of NVA Parent, Inc.,<br><br>Defendant-Appellant,<br><br>and<br><br>PET EMERGENCY CLINIC, P.S.,<br><br>Defendant. | No. 22-35711<br><br>D.C. No. 2:20-cv-00417-SAB |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

Argued and Submitted December 8, 2023
Seattle, Washington

Before: McKEOWN, N.R. SMITH, and SANCHEZ, Circuit Judges.

    Plaintiffs-Appellants Dru Choker and Matthew DeMarco ("Plaintiffs") are licensed veterinarians who are former employees and shareholders of Defendant-Appellee Pet Emergency Clinic, P.S. ("PEC"). They allege that PEC and Defendant-Appellee National Veterinary Associates, Inc. ("NVA") tried to "create a closed network" for emergency veterinary services in the Spokane area by merging and imposing non-solicitation, mandatory referral, and non-competition

2

agreements on PEC employees and shareholders. Plaintiffs sued PEC and NVA and brought claims under Section 1 and Section 2 of the Sherman Act (15 U.S.C. §1 and §2) and their Washington state analogues (RCW 19.86.030 and RCW 19.86.040).

Plaintiffs appeal the district court's grant of summary judgment over their federal claims. PEC and NVA cross-appeal the district court's refusal to exercise supplemental jurisdiction over Plaintiffs' state antitrust claims. PEC and NVA also conditionally cross-appeal a separate order denying their motions to exclude testimony from Plaintiffs' antitrust expert. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's grant of summary judgment and whether a plaintiff has antitrust standing. *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1054 (9th Cir. 1999). We affirm.

1. Plaintiffs contend they suffered antitrust injury when their employment was terminated after they refused to sign PEC's allegedly anti-competitive employment agreements. We have held, however, that "[t]he loss of a job is not the type of injury that the antitrust laws were designed to prevent" because "[a] plaintiff who is neither a competitor nor a consumer in the relevant market does not suffer antitrust injury." *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372,

1376 (9th Cir. 1996) (internal citations and quotation marks omitted).[1]

2. Plaintiffs also argue that they suffered an antitrust injury when they were excluded from the Spokane market and compelled to open their emergency veterinarian clinic in Coeur d'Alene, Idaho. Plaintiffs' allegations are too speculative to confer antitrust standing. An antitrust injury must be the "direct result" of the defendant's conduct. *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 458 (9th Cir. 2021) (citation omitted). Antitrust injury "may not be derivative and indirect" or "secondary, consequential, or remote." *Id.* (quotation marks and citation omitted). Plaintiffs' market exclusion theory does not meet this standard.

It is undisputed that Plaintiffs were never subject to any of the agreements they contend would have excluded them from the Spokane market. Plaintiffs never signed and were never subject to PEC's proposed employment agreement, and NVA's and PEC's proposed shareholder restrictions never took effect because NVA never merged with PEC. Indeed, as Plaintiffs acknowledge in their opening brief, after their termination of employment "Drs. DeMarco and Choker were now

---

[1] In its amicus brief, the United States takes no position on the merits of Plaintiffs' claims but notes that *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739 (9th Cir. 1984), allows for the recognition of antitrust standing for dismissed employees under certain circumstances. Plaintiffs now seek to rely on *Ostrofe* to establish antitrust injury. But Plaintiffs did not cite *Ostrofe* either below or in their opening brief before this Court and cannot "raise new issues on appeal to secure a reversal of the lower court's summary judgment determination." *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 825 (9th Cir. 2000).

4

fully able to directly compete in the Spokane market." Plaintiffs' assertion of market exclusion damages—"debt, start-up costs, substantial time recreating an emergency hospital, and loss of ongoing income, stress, and hardship"—thus stems from Plaintiffs' fear that PEC and NVA would eventually merge and impose competitive restrictions.

However, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).[2] Plaintiffs failed to show that at the time they incurred market exclusion damages, the alleged anti-competitive restrictions from an NVA/PEC merger were certainly impending. Plaintiffs put a down payment on their veterinary clinic in Coeur d'Alene months before a non-binding Letter of Intent between PEC and NVA was signed. Moreover, PEC and NVA could not have forced Plaintiffs (or any unwilling shareholder) to accept restrictions associated with any merger in light of statutory dissenters' rights available under Washington law. *See* RCW 23B.13.020(1)(a). Plaintiffs' market exclusion theory based on the possibility of a merger is simply

---

[2] While *Clapper* analyzed injury in the context of Article III standing, similar principles apply to antitrust standing, which also assesses the directness of the alleged injury. *See Oakland Raiders*, 20 F.4th at 458 (explaining that the second factor in the antitrust standing inquiry "focuses on the chain of causation between the plaintiff's injury and the alleged restraint of trade") (cleaned up).

too attenuated to confer antitrust standing.[3]

3. The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Plaintiffs' state law antitrust claims. The court was not required to provide an explanation for declining to exercise supplemental jurisdiction when, as here, it cited 28 U.S.C. § 1367(c)(3). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).

4. Having affirmed the district court's dismissal of Plaintiffs' claims, we do not reach NVA's and PEC's conditional cross-appeals challenging the district court's orders denying their motions to exclude testimony from Plaintiffs' antitrust expert.

**AFFIRMED.**

---

[3] The Government's amicus brief also discusses Plaintiffs' potential status as "nascent" competitors. But as the Government's counsel acknowledged at argument, whether a plaintiff is a nascent competitor does not obviate the separate inquiry whether a plaintiff has suffered antitrust injury sufficient to confer antitrust standing. Because Plaintiffs did not raise any nascent competitor theory before the District Court, we deem the issue waived. *See BankAmerica*, 206 F.3d at 825.