**No. 22-35650, 22-35698, 22-35711**
**Date of Decision: December 26, 2023**
**Judges McKeown, N.R. Smith, and Sanchez**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

DRU CHOKER, D.V.M. and MATTHEW DeMARCO, D.V.M.,

Plaintiffs – Appellants – Cross-Appellees,

v.

PET EMERGENCY CLINIC, P.S. and NATIONAL
VETERINARY ASSOCIATES, INC., acting on its own behalf
and that of NVA Parent, Inc.,

Defendants – Appellees – Cross-Appellants.

---

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:20-cv-00417-SAB
Hon. Stanley A. Bastian

---

**PET EMERGENCY CLINIC'S MOTION FOR AWARD OF
SANCTIONS**

---

Geoffrey D. Swindler
LAW OFFICE OF
GEOFFREY D. SWINDLER, P.S.
103 E. Indiana Ave, Ste A
Spokane, WA 99207
509.326.7700
*Attorneys for Pet Emergency*

Brian W. Esler
Don Scaramastra
MILLER NASH LLP
605 5th Ave. South, Suite 900
Seattle, WA 98104
206.624.8300
*Clinic*

# I.    INTRODUCTION AND RELIEF REQUESTED

Below, the District Court dismissed the antitrust claims of appellants Drs. Choker and DeMarco (the "Doctors") on summary judgment for lack of antitrust injury or standing, relying principally on this Circuit's opinion in *Vinci v. Waste Management*, 80 F.3d 1372, 1376 (9th Cir. 1996).  Indeed, the District Court's summary judgment order cited *Vinci* over a dozen times.  Choker and DeMarco studiously avoided discussing *Vinci*, both below and on appeal.  They first mentioned *Vinci* in their Third Brief,[1] where they explained that they "did not cite *Vinci* in their First Brief because it does not apply here . . .."  Third Brief, at 28.  This Court, like the District Court, concluded otherwise.

_____

[1] References to "First Brief" refer to Appellants' Opening Brief (Dkt. No. 22); references to "Third Brief" refer to Dkt. No. 56. All page numbers refer to the printed pages of the brief rather than the electronically-generated pages from the appellate docket entry.

Similarly, Choker and DeMarco repeatedly admitted that by quitting appellee Pet Emergency Clinic, P.S. ("PEC") on December 31, 2017, they became free to compete with PEC in Spokane's emergency animal services market thereafter. Opening Brief, at 8, 21. Yet they paradoxically argued that somehow PEC excluded them from that market at that time. They argued that a "non-binding" Letter of Intent that expired in August of 2018 instead constituted a binding agreement to impose non-compete restrictions on them as shareholders even after they no longer held shares. In making that argument, they ignored the issue of dissenters' rights under RCW 23B.13.020(1)(a) until their Third Brief even though PEC raised that issue below. Then they incorrectly stated that the dissenters' rights statute does "not allow dissenters to opt-out of the conditions attendant to sale." Third Brief, at 17.

Both the District Court and this Court concluded that the mere possibility of a speculative future merger did not create antitrust injury or standing. That conclusion was obvious at

least by the time the trial court granted summary judgment, if not much earlier. These Doctors' appeal is frivolous because their arguments against dismissal were legally and factually unsupported.

Finally, it cannot be forgotten that before filing this federal court lawsuit in November 2020, Drs. Choker and DeMarco had pursued nearly identical claims in state court for over two years, including a state law antitrust claim. After the District Court dismissed the federal antitrust claims, they then immediately refiled essentially the same claims again in state court. These Doctors' frivolous appeal has served to delay the inevitable dismissal of their equally meritless state law claims. Because their appeal of the dismissal of their antitrust claims was frivolous and because that appeal resulted in even further delay in disposing of the remainder of their claims, PEC requests that the Court award it sanctions in the form of attorneys' fees pursuant to FRAP 38 and/or 28 U.S.C. § 1912.

## II.    FACTUAL BACKGROUND

The Court is already familiar with the facts of this case and the voluminous record from over half a decade of litigation,[2] so PEC only summarizes salient points below.

### A.    CHOKER AND DEMARCO WERE FORMER EMPLOYEES AND SHAREHOLDERS OF PEC.

Drs. Choker and DeMarco were formerly shareholders in and employees of PEC.  While employed by PEC, they admit its business model was "pro-competitive."  12-ER-3082 ¶ 4.36. After Dr. DeMarco complained about PEC's management and suggested PEC hire an outside consultant to review its operations, PEC did so.   10-ER-2454-2455, 2458.  In May of 2017, that consultant informed PEC that Drs. Choker and DeMarco were grossly overpaid.  10-ER-2547.

PEC thereafter spent months negotiating with Drs. Choker and DeMarco regarding proposed new employment

---

[2] With their First Brief, Appellants filed 13 volumes of Excerpts of Record.

contracts. 10-ER-2357, 2359; 11-ER-2607-2608, 2801-2804; 9-ER-2151 at ¶ 33.  By November 1, 2017, PEC sent them a final version of the proposed employment contract and told them to sign it by November 15 or to terminate their employment by December 31, 2017.  11-ER-2616.  Drs. Choker and DeMarco chose the latter option and quit PEC at the end of 2017. 9-ER-2287; 10-ER-2374-2376; 9-ER-2152 ¶ 36.

## B.    CHOKER AND DEMARCO ADMITTED REPEATEDLY THAT THEY WERE FREE TO COMPETE WITH PEC ONCE THEY QUIT IN DECEMBER 2017.

As Drs. Choker and DeMarco admitted numerous times both below and on appeal, "having refused to sign restrictions before being terminated, [they] were now free agent competitors to PEC." 12-ER-3089-3090 ¶ 4.73; *see also* Opening Brief, at 8 ("Drs. DeMarco and Choker were now fully able to directly compete in the Spokane market . . ."), 21 ("Now free to compete with PEC in Spokane's emergency animal services market . . .").

As Drs. Choker and DeMarco also admitted numerous times, they immediately started looking for locations in Spokane (the market from which they now claim they were excluded) in January of 2018 to open a competing clinic. 10-ER-2466, 2467, 2468-2471; Opening Brief, at 21 ("Now free to compete with PEC in Spokane's emergency animal services market, Drs. DeMarco and Choker began looking for a building in Spokane in which to construct their competing ER clinic."); Third Brief, at 25-26 (admitting they were "actively seeking property in Spokane to develop a competitor to PEC" by "early January 2018").

They ultimately chose a location in Coeur d'Alene, Idaho because Dr. DeMarco liked that location, not because of any alleged anti-competitive restrictions. 10-ER-2471-2472. They formed an Idaho corporation (ER Corp) to purchase that property. 11-ER-2626-2640, 2641-2644, 2647-2648, 2649-2651. They formed a separate Idaho corporation (EVH, LLC) to run their veterinary practice. 11-ER- 2652-2653, 2654-2655.

Their two companies (not Drs. DeMarco and Choker personally) took out a $1.4 million loan to open their new emergency veterinarian clinic. 11-ER-2656-2658.

On about May 14, 2018, PEC signed a "Non-Binding LOI" with appellee National Veterinarian Associates, Inc. ("NVA") that contemplated PEC shareholders might be subject to certain restrictions if the parties ever reached a binding acquisition agreement. 11-ER-2695-2696, 2697-2702. If the parties did not reach final agreement by August 31, 2018, then under the Non-Binding LOI the parties would "have no further obligations to each other . . ." 11-ER-2698-2702. NVA and PEC never reached any final agreement. 11-ER-2797-2798, 2799-2800; 4-ER-628-630.

## C. CHOKER AND DEMARCO PURSUED THESE CLAIMS IN STATE COURT FOR OVER TWO YEARS BEFORE FILING THEIR FEDERAL ACTION.

In August of 2018 (i.e., just as the Non-Binding LOI was expiring of its own accord), Choker and DeMarco sued NVA and PEC in state court in Spokane. 8-ER-1934. They alleged

that they had been wrongly terminated and also asserted claims under Washington's state law analogue to the Sherman Act (the Consumer Protection Act, RCW Ch. 19.86 ("CPA")). 8-ER-1933-1947. They continued pursuing that case for over two years.

By March 8, 2019, their new clinic (d/b/a Emergency Veterinary Hospital) had opened. 10-ER-2366-2367, 9-ER-2283. ER Corp requires all of its employees (except Choker and DeMarco) to sign employment agreements that prohibit employees from moonlighting and prohibit employees from working for a competitor within 20 miles for two years after termination. 10-ER-2385-2387, 2390, 2392; 11-ER 2659-2665. Choker and DeMarco agree that such employment and post-employment restrictions are reasonable and necessary for their hospital's ordinary business purposes. 10-ER-2388-2389, 2391; 9-ER-2256-2257, 2285-2286; 10-ER-2473-2474. Yet they continue to insist that any similar restrictions, if used by PEC, are anticompetitive.

In May of 2019, one of PEC's veterinarians who signed PEC's proposed 2017 Employment Agreement (that Drs. Choker and DeMarco rejected) and who was also a shareholder (Dr. O'Dea) quit PEC, purchased a nearby veterinary clinic in Spokane, and later that year opened that clinic as an off-hours emergency clinic that competes with PEC. 9-ER-2157 ¶ 58. Thus, there was an obvious competitor to PEC in the Spokane marketplace by that time.

Choker and DeMarco remained PEC shareholders until about November 2019, when they sold back their remaining shares. 12-ER-3098, ¶ 4.108. But they continued litigating in state court.

About a year after selling back their shares, and as discovery was winding down in their state court case, Choker and DeMarco filed a nearly identical action in federal court on November 9, 2020. 12-ER-3058-3115; *see also* 2-SER-79-95 (Second Amended Complaint in state court action). They added a federal antitrust claim to maintain federal court

jurisdiction. Choker and DeMarco did not dismiss that state

court complaint until April 7, 2021. 2-SER-106-107.

### D.   CHOKER AND DEMARCO IGNORED THE TRIAL COURT'S REASONING AND CONTROLLING LAW IN PURSUING THIS APPEAL.

After another two years of discovery in the federal court

case, PEC moved for partial summary judgment seeking

dismissal of the federal antitrust claims and their state law

analogues (the CPA claims). 11-ER-2832. PEC relied heavily

on *Vinci* in moving for summary judgment and argued that the

*Ostrofe* exception did not apply here, so any claims related to

their employment with PEC were barred as a matter of law. 11-

ER-2848. PEC argued that Choker and DeMarco could not be

bound by any shareholder restrictions as none were imposed

and they had dissenters' rights. 11-ER-2850. PEC also argued

that only their corporations operated in any market and only

those corporations would have antitrust standing. 11-ER-2851.

PEC also argued on reply that their fear of speculative future

injury was insufficient for antitrust injury. 5-ER-923-924.

Choker and DeMarco responded by filing an overlength "countermotion" seeking summary judgment on all issues in their favor and primarily arguing that they had evidenced *per se* unlawful restraints of trade. 2-SER-13-35.  They ignored *Vinci* altogether; it is not cited at all in their response.  Nor did they argue that they fit into the *Ostrofe* exception.  They did not address dissenters' rights.

On August 4, 2022, the District Court granted PEC's motion and dismissed the federal claims. 1-ER-2-11. As summarized by the district court:

> Plaintiffs assert three distinct injuries from PEC and NVA's allegedly anticompetitive conduct. First, Plaintiffs claim they were injured when their employment was terminated after they refused to sign the purportedly unlawful employment agreements. Second, Plaintiffs claim harm because they were compelled to base their business out of Coeur d'Alene, Idaho, as opposed to Spokane, Washington. Third, Plaintiffs claim they are injured because they "remain unable to return to the market," due to risk of an anti-

> competitive merger. None of these
> alleged injuries are cognizable
> antitrust injuries.

1-ER-8.

The trial court held as a matter of law that the Doctors' employment termination did not constitute antitrust injury, citing the *Vinci* case that Choker and DeMarco ignored. 1-ER-8. As to their claims that they were driven from the Spokane market and could not reenter it, the District Court found that those claims were "not supported by the record" as there was no evidence that Choker and DeMarco were bound by any restrictions, they were not competitors in the Spokane market (since they did business through their Idaho corporation, again citing *Vinci*) and their fear of a future merger was "too speculative and indirect to amount to an antitrust injury." 1-ER-10 (citing to *City of Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021). The trial court denied the Doctors' counter-motion. 1-ER-10.

On appeal, Choker and DeMarco did not challenge the District Court's denial of their motion for summary judgment. *E.g.*, First Brief at 2 ("summary judgment should not have been entered in favor of defendants . . ."), at 29 ("the District Court erred in entering summary judgment in favor of defendants . . ."), at 59 ("The District Court's order dismissing their 15 U.S.C. § 1 and § 2 claims for lack of antitrust standing should be reversed . . .").  Despite not challenging that dismissal, they devoted pages 32 through 49 of their First Brief to arguing that the alleged restrictions are *per se* antitrust violations.

They did not actually address the issue of antitrust injury and standing until page 49 of their 59-page First Brief.  And when they finally addressed that issue, they again ignored *Vinci* – it is not cited in their First Brief at all.  Similarly, the Doctors ignored the *Oakland Raiders* case (which bars standing from speculative harms) – it is also not cited in their First Brief.

Despite admitting in their First Brief that they were free to compete in Spokane after leaving PEC (First Brief, at 8, 21),

these Doctors still insisted that they were somehow excluded from that market at the same time. Despite admitting they were no longer shareholders in PEC when they filed this lawsuit, they still insisted that they could be excluded by shareholder restrictions that were never adopted. *E.g.*, First Brief, at 53 ("Even though they have since negotiated the return of their PEC shares to PEC, which will relieve them of the poised restrictions, they remain excluded . . ..").  Choker and DeMarco failed to address dissenters' rights at all in their First Brief.

Perhaps realizing the weakness of the Doctors' arguments, and not wanting this Circuit to foreclose standing altogether for future less frivolous and more sympathetic litigants,[3] the United States Department of Justice ("DOJ") intervened to try to preserve arguments that these Doctors themselves never made – i.e., that they might qualify as nascent

---

[3] As the DOJ's Mr. Mintz confirmed during oral argument, the DOJ intervened to make sure that the exceptions it promoted would be preserved for "appropriate" cases.

competitors or fit within the *Ostrofe* exception.  The Doctors then tried to latch on to those arguments in their Third Brief. They tried to excuse their failure to address *Vinci* at all below or in their First Brief by arguing that Vinci "does not apply here . . .." Third Brief, at 28.  They then doubled down by arguing that *Ostrofe* does not apply either (as *Vinci* allegedly was inapplicable) but argued that they could meet the exception anyway.  Third Brief, at 29.

The Doctors also finally addressed the issue of dissenters' rights in their Third Brief.  Third Brief, at 17-18. Choker and DeMarco argued that dissenters' rights "do not allow dissenters to opt-out of the conditions attendant to the sale." Third Brief, at 18.  The Doctors' counsel repeated that claim during oral argument.  *See* oral argument, at 43:47 – 44:43 (arguing that Doctors would remain bound by merger restrictions even after exercising dissenters' rights and selling back their stock).  As this Court confirmed, that statement is wrong; the very purpose of dissenters' rights is to allow

shareholders to opt out of such conditions and get paid the fair market value for their stock instead. RCW 23B.13.020(1)(a).

This Court affirmed the district court's dismissal in an unsigned, unpublished *per curiam* opinion on December 26, 2023. Dkt. No. 89.

## E. PEC FILED THIS MOTION WITHIN 14 DAYS OF DENIAL OF THE DOCTORS' PETITION.

On January 9, 2024, PEC filed its Bill of Costs, requesting $64.50 in costs. Dkt. No. 91. That same day, the Doctors filed a "Petition for Rehearing and Rehearing En Banc." Dkt. No. 90. That Petition failed to acknowledge *Vinci*, *Oakland Raiders*, dissenters' rights, or otherwise challenge the bases upon which both the District Court and this Court dismissed Doctors' antitrust claims.[4] This Court denied that Petition on February 1, 2024. Dkt. No. 99. PEC has filed this

---

[4] Indeed, Appellants have now told the state court – in which they immediately refiled their state law claims after the District Court's dismissal – that they contemplate filing a petition for certiorari with the Supreme Court. Esler Decl., Ex. 4, at 3.

Motion within 14 days of that denial. The Doctors oppose this motion.

## III. ARGUMENT

## A. THE COURT HAS DISCRETION TO AWARD SANCTIONS.

If this Court determines that Choker's and DeMarco's appeal was "frivolous," this Court may "award just damages and single or double costs to the appellee." FRAP 38; *see also* 28 U.S.C. § 1912 (Court of Appeals may award prevailing party "just damages for his delay, and single or double costs). "Just damages" may include attorneys' fees incurred by the appellee in defending against the frivolous portions of the appeal. *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993). The Court has noted that it has inherent power to impose sanctions on both appellants and their counsel. *Int. Un. Of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1407 n.8 (9th Cir. 1985).

Motions for such sanctions must be filed within the time limits established by Ninth Circuit Rule 39-1.6(a). *In re Westwood Plaza North*, 889 F.3d 975, 977 (9th Cir. 2018).

Pursuant to that rule, PEC files this motion within 14 days after the Court denied the Doctors' Petition. The motion is timely.

As demonstrated above, Choker's and DeMarco's appeal is frivolous. "An appeal is frivolous if the result is obvious or if the claims of error are wholly without merit." *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133, 1137 (9th Cir. 1984). Bad faith is not required to impose such sanctions, though it can factor into the decision. *In re Becraft*, 885 F.2d 547, 549 (9th Cir. 1989). Making arguments on appeal that were not properly preserved in the trial court can be a basis for a finding of frivolousness. *E.g.*, *General Brewing Co. v. Law Firms of Gordon, Thomas*, 694 F.2d 190, 193 (9th Cir. 1982)(awarding fees to successful appellees in appeal arising out of antitrust action).

Similarly, an appellant's failure on appeal to address the bases for the trial court's decision (and especially case law cited by the trial court) can also be a basis for Rule 38 sanctions. *Taylor v. Sentry Life Ins. Co*., 729 F.2d 652, 656 (9th Cir. 1984).

As succinctly summarized by the Seventh Circuit in imposing
FRAP 38 sanctions for failing to address controlling precedent
relied on by the district court, the "ostrich-like tactic of
pretending that potentially dispositive authority against a
litigant's contention does not exist is as unprofessional as it is
pointless." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192,
1198 (7th Cir. 1987).

## B.    THE DOCTORS' APPEAL WAS FRIVOLOUS.

As the Supreme Court has observed, antitrust litigation is
unusually complex and expensive for defendants, antitrust
damages can be ruinous, and that combination gives antitrust
plaintiffs a cudgel for demanding *in terrorem* settlements for
even weak cases, so courts should be especially vigilant in
weeding out those weak cases. *Bell Atlantic Corp. v. Twombly*,
550 U.S. 554, 558, 127 S.Ct. 1955, 1966-1967, 167 L.Ed.2d
929 (2007). The Doctors' antitrust case was meritless, which
became even more evident on appeal.

This Court has imposed sanctions for frivolous appeals from dismissals of antitrust cases. *E.g.*, *Smith v. Ricks*, 31 F.3d 1478, 1489 (9th Cir. 1994)(imposing FRAP 38 sanctions on doctor who appealed dismissal of antitrust claims against hospital that employed him and various doctors when result was obvious); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 653 (9th Cir. 1988)(imposing FRAP 38 sanctions on doctor who appealed dismissal of antitrust claims against a hospital).  Other circuits have also sanctioned frivolous antitrust appeals. *E.g.*, *A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1407 (7th Cir.), *cert. denied* 506 U.S. 867 (1992) (sanctioning appellant in part for failing to address bases for trial court's dismissal until reply brief); *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) (imposing FRAP 38 sanctions in appeal from dismissal of antitrust action where Doctors own factual admissions undermined its arguments).

Such sanctions are especially appropriate when appellants fail to address the bases for the District Court's dismissal. For instance, here's why the Fifth Circuit imposed Rule 38 sanctions for a frivolous antitrust appeal:

> [Appellant] has failed to produce any evidence of antitrust injury and its theory of damages has been expressly rejected by this Court in prior case law. [Appellant's] counsel has made virtually no effort to point to evidence raising a genuine issue of material fact. . . . [Appellant's] counsel made no attempt to address most of the issues raised in the district court's opinion.

*Olympia Co., Inc. v. Celotex Corp.*, 771 F.2d 888, 893 (5th Cir. 1985). Similarly, the Sixth Circuit imposed sanctions for a frivolous antitrust appeal where the appellant (like the Doctors here) pursued on appeal theories never raised below, failed to address the bases for the trial court's finding of no antitrust standing, and after years of discovery had little evidentiary support for its claims. *B&H Medical, LLC v. ABP Admin., Inc.*, 526 F.3d 257, 270-271 (6th Cir. 2008).

These Doctors studiously ignored the binding Ninth Circuit precedent (*e.g.*, *Vinci* and *Oakland Raiders*) cited by the District Court (and this Court) that doomed their claims. *See Kelley v. Intn'l Broth. Of Elec. Workers*, 803 F.2d 516, 519 (9th Cir. 1986) (appellant who failed to recognize controlling Ninth Circuit law sanctioned).

They admitted in their own briefs that they were free to compete with their former employer PEC in Spokane immediately after leaving -- yet continued to argue that PEC somehow drove them out of Spokane. They virtually ignored the District Court's conclusion that they only practice veterinary medicine through their corporations (so only the corporations are potential competitors). *See*, *e.g.*, *Solinger v. A&M Records, Inc.*, 718 F.2d 298, 299 (9th Cir. 1983)(neither shareholders nor prospective shareholders have antitrust standing).

The District Court found that the Doctors' claim that PEC somehow excluded them from the Spokane marketplace

was "not supported by the record."  1-ER-10.  PEC witnesses

unanimously testified that they did not learn of any proposed

shareholder restrictions until receiving NVA's first draft of the

proposed Non-Binding LOI on April 16, 2018.  9-ER-2155-

2156, 3-ER-563-566, 574.  Discovery confirmed that Dr.

Choker learned of these potential restrictions shortly thereafter

via a text message from a PEC board member.  9-ER-2232.

These Doctors were never able to produce any admissible

evidence to suggest that PEC excluded them from the Spokane

market. Importantly, as Choker and DeMarco were

shareholders until November of 2019, they also knew or should

have known that PEC had ceased all discussions with NVA

about a possible combination by October 2018[5] – yet they

continued arguing that a merger was somehow imminent.

---

[5] They also knew that there was no pending transaction from their over two years of litigation in the state court before they filed their federal action.

These Doctors also misrepresented the concept of "dissenters rights" as being the opposite of what they actually are. *See* Dkt. 89, at 5 (confirming that dissenters' rights would prevent PEC or NVA from forcing these Doctors to accept shareholder restrictions). A court is within its rights to impose sanctions when appellants take positions that are "contrary to specific and unambiguous statutory provisions . . .." *Grimes v. CIR*, 806 F.2d 1451, 1454 (9th Cir. 1986); *see also Oliver v. Mercy Medical Center, Inc.*, 695 F.2d 379, 382 (9th Cir. 1982)(arguments barred by plain language of controlling statute found frivolous).

## C. THE DOCTORS' APPEAL DELAYED RESOLUTION OF THE STATE COURT CLAIMS.

Immediately after they filed their Notice of Appeal, the Doctors filed a new state court action pursuing essentially the same claims (minus the federal antitrust claim) that they have been pursuing since 2018. *Compare* 2-SER-79-95 (Second Amended Complaint in original state court action) *with* 12-ER-3058-3115 (Complaint in this action) *with* Esler Decl., Ex. 5

(new state court action filed on August 22, 2022). Thus, PEC is dragged back into the very same forum in which the Doctors started this litigation almost six years ago.

While such filing saved those claims from being barred by the statutes of limitations (28 U.S.C. § 1367(d)), the Doctors could have then dropped this appeal and instead pursued state court litigation. By pursuing this meritless appeal, they delayed any resolution of those remaining claims.

Beyond FRAP 38, the Court also has sanction authority under 28 U.S.C. § 1912: "the court in its discretion may adjudge to the prevailing party just damages for its delay, and single or double costs." 28 U.S.C. § 1912. This Court usually applies the same standard to Section 1912 as it does to FRAP 38. *Operating Eng. Pension Trust v. Cecil Backhoe Service, Inc.*, 795 F.2d 1501, 1508 (9th Cir. 1986). Here, PEC has undoubtedly been damaged by the delay attendant with this appeal, as it could have already disposed of the remaining claims on the merits in state court by now. Instead, PEC has

had to incur further attorneys' fees to defend against this frivolous appeal and only now will be free to pursue dismissal of the remaining state law claims.

**D.    PEC HAS INCURRED $143,495 DEFENDING DISMISSAL OF THE ANTITRUST CLAIMS.**

Should the Court determine that an award of sanctions in the form of attorneys' fees is appropriate, PEC is submitting concurrently declarations from its two principal attorneys on appeal (Geoff Swindler and Brian Esler) attesting to the fees reasonably incurred in defending against the Doctors' appeal of dismissal of their Sherman Act claims.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dep't*, 470 F.3d 889, 892

(9th Cir. 2006). When a client has paid for the work performed, there is a strong presumption that the hourly rate and the hours spent are reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 130 S.Ct. 1662, 1673 (2010).

A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *City of Riverside v. Rivera*, 777 U.S. 561, 580 n.11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). The party opposing the fee application has the burden of submitting evidence challenging the conclusion that the fees actually incurred by the client are reasonable. *Nadarajah v. Holder*, 569 F.3d 906, 917-918 (9th Cir. 2009).

As explained in further detail in PEC's attorney's declarations,[6] $143,495 would be the lodestar amount of the

---

[6] PEC has redacted certain entries for privilege. PEC does not need to waive privileges to recover fees. *Democratic Party v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).

reasonable fees incurred to defend against the Doctors'

frivolous appeal.

## IV. CONCLUSION

This is an appeal that never should have been brought.

Choker and DeMarco failed to address the bases for the trial

court's decision and binding Ninth Circuit case law and

Washington statutory authority doomed their theories. Despite

their losses, Choker and DeMarco are doggedly pursuing

substantially similar claims in state court, which claims could

have been disposed of by now had Choker and DeMarco not

pursued this appeal. This Court should find that their appeal

was frivolous, and award PEC $143,495.

Dated this 15th day of February, 2024.

/s/ Brian W. Esler

Brian W. Esler, WSBA No. 22168
MILLER NASH LLP
605 5th Ave. S., Suite 900
Seattle, WA 98104
206.624.8300
brian.esler@millernash.com

Geoffrey D. Swindler, WSBA No. 20176
LAW OFFICE OF GEOFFREY D. SWINDLER, P.S.
103 E. Indiana Ave, Ste. A
Spokane, WA 99207
509.326.7700
gds@swindlerlaw.com

*Attorneys for Defendant-Appellee/Cross-Appellant Pet Emergency Clinic, P.S.*

**CERTIFICATE OF COMPLIANCE**

**9th Cir. Case Nos. 22-35650, 22-35698, 22-35711**

I am the attorney or self-represented party.

I certify that the attached Motion For Award of Sanctions

is:

Prepared in a format, typeface, and type style that complies

with Fed. R. App. P. 32(a)(4)-(6) and 27(d) and **contains**

**the following number of words**: 4433.


**Signature**: s/ *Brian W. Esler*        **Date**: February 15, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 15th day of February, 2024.

*/s/ Brian W. Esler*

Brian W. Esler

4895-9060-8803.3